# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DONALD FALKENSTEIN, | ) | CASE NO.  1:14-CV-1629 |
| | ) | |
| Petitioner, | ) | JUDGE OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| BENNIE KELLY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Donald Falkenstein ("Falkenstein" or "Petitioner") for a

writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of

the Ohio Department of Rehabilitation and Correction pursuant to journal entry of

sentence in the case of *State of Ohio v. Falkenstein*, Case No. CR 434255 (Cuyahoga

County July 17, 2003). The State moves to dismiss the petition on the basis that

Petitioner failed to file it within the one-year statute of limitations applicable to federal

habeas petitions.  (Doc. No. 7.)  The parties have also briefed the merits of Petitioner's

grounds for relief.  For the reasons set forth below: (1) the State's motion should be

DENIED in part and GRANTED in part; *i.e.,* denied with respect to Petitioner's first

ground for relief and granted with respect to Petitioner's second ground for relief; and

(2) Petitioner's first ground for relief should be DISMISSED.

## I.  Introduction

The state appellate court that affirmed Petitioner's conviction noted the following

relevant facts:

> Appellant began engaging in sexual conduct with his daughter (the "victim") after appellant's second wife died. The victim testified that the first sexual encounter occurred when she was eight years old. Appellant grabbed her hand, placed it on his penis, and told her to move her hand up and down. The second sexual encounter, which occurred two days later, was similar to the first, except that appellant forced her to continue until he ejaculated and admitted to the victim that what he was doing to her was "not right ." A couple of days later, appellant made the victim touch his penis again.

> The sexual encounters quickly escalated to rape. Appellant entered the victim's bedroom at night and digitally masturbated her. Sometimes appellant would stop if the victim told him it hurt. Other times he would not stop. On at least five occasions, appellant put his mouth on and kissed the victim's vagina. On more than 10 occasions, appellant would take off his pants and the victim's pants, put lotion on his penis, and try to put his penis into her vagina. Because the victim would close her legs and tell appellant not to do that, appellant would only be able to put his penis on the outer part of the victim's vagina. On at least two occasions, appellant gave the victim beer before he tried to have sexual intercourse with her. Sometimes, appellant's third wife was home during the rapes.

> The victim testified that the appellant would digitally masturbate her and place his mouth on and kiss her vagina more than once a week or put his penis on the outside of her vagina sometimes twice a day. In fact, the victim testified that only a week and a half would pass without appellant touching her sexually. The last time appellant tried to have sexual intercourse with her was in July 2002.

> Appellant told the victim that she would be in trouble if she told anyone about the sexual encounters and, as a result, the victim did not disclose to anyone what her father had done to her. The Cuyahoga County Department of Children and Family Services investigated appellant in late July 2002 on another matter, removed the victim from appellant's home, and placed the victim in the temporary custody of her aunt. When the victim arrived at her house, her aunt noticed

2

> that the victim had a white discharge in her underwear and took her to the doctor for treatment. The victim was diagnosed with a yeast infection. At that time, the victim did not reveal the sexual encounters with the appellant because she did not want her father to go to jail. However, in the beginning of October 2002, the victim finally disclosed everything to her aunt, who then contacted the police and an investigation ensued.

*State v. Falkenstein*, No. 83316, 2004 WL 1119620, *1 (Ohio App. Ct. May 20, 2004)

("*Falkenstein I*").

## II.  Background

**A.    Relevant State Court Proceedings**

**1.    Indictment, Trial and Direct Appeal**

In February 2003, the State filed an indictment charging Petitioner with 41 counts of rape of a child under age 13.  (Doc. No. 7-1 at Ex. 1.)  In July 2003, a jury convicted Petitioner of all 41 counts in the indictment.  (Trial Transcript ("Tr.") at 361-62, Doc. No. 8-1.)  Thereafter, the trial court sentenced Petitioner to two consecutive terms of life imprisonment, with the possibility of parole after 20 years.  (Doc. No. 7-1 at Ex. 3.)  The trial court advised Petitioner that he would be subject to a term of post-release control as part of his sentence.  (*Id*.)

In August 2003, Petitioner, through counsel, filed a timely notice of appeal. (Doc. No. 7-1 at Ex. 4.)  In his brief, Petitioner raised the following relevant assignment of error:

> I.    The evidence cannot sustain forty-one convictions of Rape in violation of R.C. 2907.02.

(Doc. No. 7-1 at Ex. 5.)

3

On May 20, 2004, the state appellate court affirmed Petitioner's conviction. *Falkenstein I*, 2004 WL 1119620.  Petitioner did not file a timely notice of appeal in the Ohio Supreme Court.  More than one year later, on September 28, 2005, Petitioner, through counsel, filed a motion for a delayed appeal, which the Ohio Supreme Court denied on November 9, 2005. (Doc. No. 7-1 at Exs. 8, 35.)

> **2.     October 2010 Post-Conviction Motion**

On October 10, 2010, Petitioner, *pro se*, filed in the trial court a motion to set aside or vacate his sentence, arguing that he was entitled to re-sentencing hearing because, in its sentencing entry, the trial court had failed either to specify the length of the term of post-release control that was included in his sentence, or to describe the consequences of violating post-release control.  (Doc. No. 7-1 at Ex. 9.)  On March 29, 2011, the trial court denied the motion, noting that Petitioner was serving a life sentence.  (*Id*. at Ex. 11.)

Petitioner filed a timely notice of appeal in the appellate court.  (Doc. No. 7-1 at Ex. 12.)  On October 6, 2011, the state appellate court issued a decision reversing the state trial court's decision.  *State v. Falkenstein*, No. 96659, 2011 WL 461033 (Ohio App. Ct. Oct. 6, 2011) ("*Falkenstein II*").  The state appellate court agreed that the trial court had violated Ohio law by failing to specify the length of the term of post-release control and by failing to describe the consequences of violating the conditions of post-release control in its journal entry.[1]  2011 WL 461033 at *2.  The court concluded,

---

[1] The state appellate court noted that Petitioner had not requested a transcript of his sentencing hearing, and that Petitioner stated that a transcript was not necessary.  2011 WL 461033 at *1, n.1.  Accordingly, the appellate court "presume[d] that Petitioner was properly informed about postrelease control and the possible sanctions for violating

4

however, that it was not necessary to remand the case for a new sentencing hearing.

*Id*.  (citing *State v. Fischer*, 942 N.E.2d 332, 128 Ohio St.3d 92 (Ohio 2010)).  Rather, the appellate court modified and corrected Petitioner's sentence to reflect a five-year term of post-release control.[2]  *Id*.  The appellate court remanded the case to the trial court for the purpose of correcting the sentencing entry to reflect the correct length of post-release control, and to describe the consequences of violating the conditions of post-release control.  *Id* .at *3.

On December 23, 2011, on remand, the trial court issued a journal entry modifying and correcting its prior journal entry to specify that Petitioner's sentence included a five-year term of post-release control, and to list the consequences of violating the conditions of post-release control.  (Doc. No. 7-1 at Ex. 16.)

Fifteen months later, on March 21, 2013, Petitioner, through counsel, filed in the state appellate court a motion for leave to file a delayed appeal from the December 2011 trial court journal entry correcting his sentence.  (Doc. No. 7-1 at Ex. 18.)  The state appellate court granted him leave to appeal.  (*Id*. at Ex. 19.)  In his appellate brief, Petitioner raised the following assignment of error:

The trial court erred by re-sentencing the defendant without

_____

it at his sentencing hearing."  *Id*. Review of the sentencing transcript reveals that the trial court advised Petitioner that his sentence included a term of post-release control. (Doc. No. 8-1 at 390.)

[2] The state appellate court relied on Ohio Rev. Code § 2953.08(G)(2), which permits a reviewing court to "increase, reduce or otherwise a modify a sentence" that is appealed.  The court noted that "[c]orrecting a defect in a sentence without remand is an option that has been used in Ohio and elsewhere for years in cases in which the original sentencing court, as here, had no sentencing discretion. *Falkenstein II*, 2011 WL 461033 at *2.

> a hearing [at ] which defendant was present and
> represented by counsel.

(*Id*. at Ex. 20.)  Petitioner contended that the state trial court's decision to correct his sentence without conducting a hearing at which he was present violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution.  (*Id*. at p. 7.)

On December 5, 2013, the state appellate court affirmed the decision of the trial court.  *State v. Falkenstein*, No. 99670, 2013 WL 6408705 (Ohio App. Ct. Dec. 5, 2013) ("*Falkenstein III*").  The court stated that Petitioner erred in appealing from the trial court's entry carrying out the appellate court's mandate, rather than appealing the appellate court's October 2011 decision to the Ohio Supreme Court.  2013 WL 6408705 at *2.  The appellate court, however, noted that the Ohio Supreme Court had specifically approved the use of a *nunc pro tunc* order to correct a sentencing entry that had improperly omitted information regarding post-release control and concluded that Petitioner's assignment of error lacked merit.  *Id.* at **2-3 (citing *State v. Qualls*, 967 N.E.2d 718, 131 Ohio St.3d 499 (Ohio 2012)).

Petitioner, *pro se*, filed a notice of appeal and a memorandum in support of jurisdiction in the Ohio Supreme Court.  (Doc. No. 7-1 at Exs. 23, 24.)  In his memorandum in support of jurisdiction, Petitioner reiterated the argument that the state trial court had violated his constitutional rights under the Sixth and Fourteenth Amendments when it corrected his sentence without conducting a hearing.  (Doc. No. 7-1 at Ex. 24.)  On April 23, 2014, the Ohio Supreme Court declined jurisdiction.  (*Id*. at Ex. 25.)

6

## B.    Proceedings in this Court

On July 23, 2014, Petitioner, *pro se*, filed his § 2254 petition this Court.  (Doc.

No. 1.)  He raises the following ground for relief:

> I.    The trial court erred to the prejudice of Appellant
> when the Eighth Appellate District affirmed the failure
> of the trial court to re-sentence the Defendant without
> a hearing, where the state statute provides that an
> [*sic*] defendant sentenced prior to July 11, 2006
> pursuant to [Ohio Rev. Code] § 2929.191(A)(1) & (C)
> [m]ust be remanded for a hearing to correct the
> judgment of conviction concerning the post-release
> control.

> II.   The evidence was insufficient to sustain the forty-one
> carbon copy convictions of rape in violation of [Ohio
> Rev. Code §] 2907.02.

(*Id*.)  In November 2014, the State filed a motion to dismiss the petition as untimely, in

which the State argued that both grounds for relief were barred by the applicable

statute of limitations.  (Doc. No. 7.)  In December 2014, this Court directed the State to

file a Return of Writ in which it addressed the merits and other procedural aspects of

Petitioner's first ground for relief.  (Doc. No. 10.)  The parties have now completed

briefing in this case.  (Doc. Nos. 11, 12.)

### III.  Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district

wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The

Court of Common Pleas of Cuyahoga County, Ohio sentenced Petitioner.  (Doc. No. 7-

1 at Ex. 3.)  Cuyahoga County is within this Court's geographic jurisdiction.  *See* 28

7

U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over this  § 2254 petition.

### IV.  Ground One - State Court Failure to Conduct a Hearing on Re-Sentencing

In his first ground for relief, Petitioner argues that the state appellate court violated his constitutional rights when it affirmed the trial court's decision to correct the error in his sentence via *nunc pro tunc* entry rather than by conducting a hearing at which Petitioner was present and represented by counsel.  The State contends that this ground for relief must be dismissed because it is: (1) not cognizable; (2) untimely; and (3) unexhausted and procedurally defaulted.  The State's first and third arguments lack merit.  The State's second argument implicates complicated issues of equitable tolling such that it would be more judicially efficient – particularly in light of the uncomplicated nature of Petitioner's first ground for relief – for the Court to consider Petitioner's first ground for relief on the merits.

### A.    Cognizability

The State contends that Petitioner's first ground for relief is not cognizable on habeas review because it alleges an error in state court collateral proceedings.  The State relies on *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986), to support its argument.  In *Kirby*, the petitioner filed a § 2254 petition asserting that he had received ineffective assistance of counsel in his state court post-conviction proceedings when his attorney declined to call all of the witnesses suggested by the petitioner at a hearing on petitioner's post-conviction motion.  The district court dismissed the petition.  The Sixth Circuit affirmed the dismissal on appeal, concluding that the petitioner's ground for relief was not cognizable on habeas because it fell outside the scope of the writ:

8

> The writ, traditionally, has been available when the petitioner is in custody or threatened with custody and the detention is related to a claimed constitutional violation.
>
> * * *
>
> [Here,] Kirby claims a denial of the [S]ixth [A]mendment right to effective assistance of counsel, a denial of due process, and denial of equal protection in the State *post-conviction* proceedings – claims unrelated to his detention.  Kirby has raised no other claims deriving from the conviction or sentencing proceeding.  If we were to allow Kirby to proceed on his petition and if we were to hold in favor of Kirby, the result would not be release or a reduction in Kirby's time served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.
>
> * * *
>
> [T]he writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings such as Kirby claims here because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.

794 F.2d at 247.

Here, the State characterizes Petitioner's argument in Ground One as asserting an error in his post-conviction proceedings.  According to the State, Petitioner's argument is that the state trial court made a mistake when it decided to correct his sentence via *nunc pro tunc* without conducting a hearing.  The State contends that, because such an argument merely asserts an error or deficiency in the manner in which the state court conducted Petitioner's post-conviction proceeding, the first ground for relief falls outside the scope of the writ.  This interpretation weighs in favor of concluding, under *Kirby*, that Petitioner's first ground for relief is not cognizable on

9

habeas.[3]

It is arguable, however, that the State oversimplifies the first ground for relief. Petitioner's first ground for relief could also be interpreted to contend that the state trial court erred with respect to his term of imprisonment when it corrected his sentence via *nunc pro tunc* entry without conducting a hearing.  In other words, Petitioner's argument could be construed as alleging an error with respect to his sentencing, not just an error in the manner in which the state court conducted his post-conviction proceedings. Interpreted in this manner, Petitioner's first ground for relief could reasonably be construed as challenging "the fact or duration of his confinement," and, thus, available for habeas review.  *Kirby*, 794 F.2d at 248.   If Petitioner's first ground for relief is construed in this manner, the issue asserted by Petitioner attacks his "detention itself," rather than "a proceeding collateral to [Petitioner's] detention."  *Id*.  While resolution of this issue in Petitioner's favor would not undo his conviction, it could  require that he be re-sentenced, which is sufficient to bring the first ground for relief into the scope of the

_____

   [3]  The State also argues that because Petitioner asserted the sentencing error in a post-conviction motion precludes habeas review of his first ground for relief.  This contention relies on an overly broad application of *Kirby*.   To support its argument, the State cites to several other cases in which the Sixth Circuit applied *Kirby* to determine that a particular claim was not cognizable on habeas review.  Those cases, however, are each distinguishable from this case because, in each of those cases, the petitioner asserted that the state courts had committed an error in conducting his post-conviction proceedings, *see Cress v. Palmer*, 484 F.3d 844 (6th Cir. 2007) (claim that the state court erred during post-conviction proceeding by declining to allow petitioner to offer recantation evidence was not cognizable on federal habeas review); *Roe v. Baker*, 316 F.3d 557, 570-71 (6th Cir. 2002) (petitioner claimed that appellate court erred in failing to consider transcript of hearing testimony when it reviewed the trial court's denial of his Ohio Revised Code § 2953.21 petition), or that Ohio's post-conviction procedure was deficient, *see Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (petitioner argued that Ohio's post-conviction scheme failed to provide defendants with an adequate corrective process for reviewing claims of constitutional violations).

10

writ.  *See* *Kirby*, 794 F.2d at 248 ("We believe that the result of the habeas petition need not be reversal of the conviction.  However, the petition must directly dispute the fact or duration of the confinement.").

The question of whether Petitioner's first ground for relief is cognizable on habeas depends upon how that ground for relief is interpreted by this Court.  Given that Petitioner is *pro se*, this Court is required to liberally construe his habeas petition. *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to liberal construction.  The appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition to encompass any allegation stating federal relief.") (internal quotation marks and citations omitted).  Accordingly, this Court will construe Petitioner's first ground for relief as asserting that the trial court erred with respect to the imposition of his sentence, and reject the State's argument that the first ground for relief is not cognizable on habeas review.[4]

**B.    Timeliness**

The State also contends that Petitioner's first ground for relief is not timely.  In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), Congress enacted a period of limitations for the filing of habeas petitions.  The statute provides, in relevant part:

---

[4] The State also contends that Petitioner's first ground for relief does not assert a cognizable claim because the lack of a hearing was not a constitutional violation, and because, even if this Court granted the petition, the result would not affect Petitioner's sentence.  (Doc. No. 11 at 10.)  These arguments go to the merits of the first ground for relief, rather than its cognizability.

11

(d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

* * *

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).  The Sixth Circuit has determined that "the one-year statute of limitations begins to run on a habeas petition that challenges a resentencing judgment on the date that the resentencing judgment became final, rather than the date that the original conviction became final."  *Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006).

Here, the latest date on which Petitioner's resentencing judgment became final was January 22, 2012 – thirty days after the state trial court entered the *nunc pro tunc* entry correcting Petitioner's sentence.[5]  Under *Linscott*, Petitioner's one-year statute of limitations began to run the next day and expired on January 21, 2013.  Petitioner did not

---

[5] The State argues that Petitioner's resentencing judgment became final on November 20, 2011 – forty-five days after the appellate court issued its decision modifying Petitioner's sentence and instructing the trial court to correct the sentencing entry.  (Doc. No. 7 at 13.)  The State does not, however, provide any authority for its assumption that the relevant date for the running of the AEDPA statute of limitations in this case is the date on which the appellate court modified the sentence, rather than the date on which the trial court entered the corrected judgment entry, particularly in light of the fact that the state appellate court remanded the case to the state trial court to correct the sentencing entry.  Research does not reveal any authority addressing this issue.  This Court need not resolve the issue in this case, as, under either calculation, Petitioner's § 2254 petition was not timely filed.

12

file his § 2254 petition until July 23, 2014, beyond the expiration of that one-year period. Accordingly, unless Petitioner is entitled to equitable tolling, his first ground for relief was not timely filed.

It is well established that "AEDPA's limitations period is subject to equitable tolling, a doctrine that 'allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control,'" and where the petitioner diligently pursued his rights. *Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Here, Petitioner argues that he is entitled to equitable tolling in this case because he was not "advised of the issuance of the *nunc pro tunc* entry until well beyond the time period to timely appeal it had elapsed, which is the reason the Court of Appeals ultimately permitted a delayed appeal after Petitioner finally discovered it." (Doc. No. 9 at 4.) The record supports Petitioner's contention that he was belatedly notified of the trial court's entry. On March 21, 2013, Petitioner, through counsel, filed a motion for leave to file a delayed appeal from the state trial court's entry correcting Petitioner's sentencing entry. (Doc. No. 7-1 at Ex. 18.) In the motion, Petitioner's counsel asserted that neither he nor Petitioner received notification of the trial court's December 2011 entry until Petitioner contacted the appellate court to inquire about appealing his re-sentencing. (*Id*.) According to counsel, a staff attorney at the appellate court notified counsel that counsel had been appointed to represent Petitioner in his appeal. (*Id*.)

The State argues that Petitioner is not entitled to equitable tolling in this case because he failed to properly pursue review of the appellate court's decision correcting

13

his sentence.  According to the State, Petitioner should have filed an appeal from the appellate court's October 2011 decision correcting his sentence and remanding the case to the trial court, rather than from the state trial court's December 2011entry correcting the sentencing entry.  The State contends that Petitioner's failure to do so demonstrates that he was not diligent in pursuing his claim.

This is a close question.  The State does not challenge Petitioner's assertion that he was unaware of the trial court's December 2011 entry until after the expiration of his AEDPA period of limitation.  Petitioner's failure to appeal from the appellate court's November 2011 decision could be the result of ineffective assistance of counsel, as his appellate counsel's March 2013 motion for leave to file a delayed appeal suggests that counsel was not aware that the appropriate course was to appeal from the appellate court's October 2011 decision.  This fact may weigh in favor of equitably tolling the statute of limitations in this case.  The record, however, is devoid of information regarding Petitioner's diligence in pursuing his claims.  For example, Petitioner's March 2013 motion for leave to file a delayed appeal does not contain any information regarding when Petitioner first learned of the trial court's corrected sentencing entry.  Petitioner does not provide this information in any of his filings in this Court.  Accordingly, there is insufficient information to decide Petitioner's claim that he is entitled to equitable tolling in this case.

Generally, where a petitioner raises a colorable claim of equitable tolling, a federal court may conduct a hearing or otherwise gather evidence to ascertain whether the petitioner is entitled to equitable tolling.  *See, e.g., Holland v. Florida*, 560 U.S. 631, 654 (2010).  In this case, however, as discussed in Section IV(D), *infra*, the merits of Petitioner's first ground for relief are simple and easily resolved.  Accordingly, "it [would

14

be] considerably easier and thus more judicially efficient" to decide the merits of Ground One "than to untangle the complexities of the timeliness issue." *Jones v. Bowersox*, 28 F. App'x 610, 611 (8th Cir. 2002); *see also Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) ("In this case, the question of procedural default presents a complicated question of Michigan law and is unnecessary to our disposition of the case.  We will therefore proceed directly to the merits of [the petitioner's] claim.").  Rather than decide the issue of equitable tolling in this case, this Court should deny the State's motion to dismiss with respect to this ground for relief, and consider Petitioner's first ground for relief on the merits.

## C.    Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that his claim is a federal claim, rather than "merely . . . an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

15

Similarly, a federal court may not review  "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).; *see also See* *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

As a general principle, this Court can dismiss a habeas petition that contains unexhausted claims without prejudice to allow the petitioner to return to state court to pursue his available remedies.  *See* 28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982).  However,  if there are no longer any state court remedies still available to Petitioner with respect to an unexhausted claim, this Court may deem the claim procedurally defaulted.  *See* *Gray*, 518 U.S. at 161-62 ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Here, the State argues that Petitioner failed to properly exhaust his first ground for relief because, rather than filing a direct appeal from the November 2011 decision of the appellate court modifying his sentence (*Falkenstein II*), Petitioner filed an appeal from the

16

December 2011 state court entry correcting its prior sentencing entry.[6]  In *Falkenstein III*, the state appellate court acknowledged that Petitioner should have filed an appeal from its decision in *Falkenstein II* – which he did not do.  The appellate court, however, also reviewed the merits of Petitioner's claim:

> Filing an appeal from the trial court's judgment that merely carried out our mandate is not the proper procedural vehicle for having this court reconsider its prior decision. To properly challenge our holding in *Falkenstein II*, Falkenstein should have appealed our decision in *Falkenstein II* to the Supreme Court of Ohio. He did not.
>
> Furthermore, even if, for argument's sake, we were to reconsider our decision in *Falkenstein II*, we note that after this court issued *Falkenstein II*, the Supreme Court of Ohio, in *State v. Qualls*, [967 N.e.2d 718, 131 Ohio St.3d 499], specifically approved the use of a *nunc pro tunc* order to correct a flawed sentencing entry that had omitted proper postrelease control notification, where the notification had been given at the sentencing hearing. This case falls into that category, because of a presumption of regularity that arises from a lack of demonstration otherwise by the appellant, as we noted in *Falkenstein II*.
>
> Since the 2012 *Qualls* decision, this court has consistently applied *Qualls* to allow the use of a nunc pro tunc entry to correct a defective sentencing entry.
>
> *   *   *
>
> In *Falkenstein II*, we modified appellant's sentence and remanded the case for the trial court to correct the sentencing entry. Although we did not specifically use the

---

[6] The State also argues that, in his post-conviction motion, Petitioner failed to fairly present the federal constitutional nature of his claims to the state courts.  This is not correct.  The record reveals that in his appeal from the trial court's December 2011 entry modifying its original judgment entry, Petitioner asserted that the trial court's failure to conduct a hearing violated his Sixth and Fourteenth Amendment rights.  (Doc. No. 7-1 at Ex. 20.)  He reiterated this argument in his subsequent memorandum in support of jurisdiction in the Ohio Supreme Court.  (Doc. No. 7-1 at Ex. 24.)

> term "*nunc pro tunc*," our instructions regarding the trial
> court's duty on remand is consistent with *Qualls*.
>
> Falkenstein's assignment of error lacks merit.  The judgment
> of the trial court is affirmed.

*Falkenstein III*, 2013 WL 6408705 at **2-3.

The State contends that, in *Falkenstein III*, the appellate court relied on Petitioner's failure to appeal from its decision in *Falkenstein II* to decline to review Petitioner's argument on appeal, such that Petitioner procedurally defaulted the claim.  The State's description of *Falkenstein III* is not entirely correct.  Although the appellate court acknowledged that Petitioner had committed a procedural error, it reviewed his claim on the merits.  This issue implicates the "plain statement rule" that is applicable to habeas petitions in the context of procedural default.  Under that rule, "[b]ecause a plain statement [that the state court relied on a procedural rule to decline to review a petitioner's claim] is required, 'a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering judgment in the case clearly and expressly states that its judgment rests on the procedural bar.'" *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).

In this case, the appellate court described the relevant procedural bar, but the court did not expressly state that it declined to review Petitioner's claim on that basis.  Further, although the appellate court prefaced its discussion of the merits of the claim with the phrase, "even if, for argument's sake, we were to reconsider our decision in *Falkenstein II*," it then engaged in a lengthy discussion of the merits of Petitioner's

18

argument.  Finally, the appellate court determined that Petitioner's claim "lacked merit," and affirmed the trial court's judgment.  Given this, the language of the decision in *Falkenstein III* does not "clearly and expressly" state that the appellate court relied on the procedural bar to decline to consider Petitioner's claim on direct appeal.  *See Harris*, 489 U.S. at 266, n.13 (noting that "[w]hile it perhaps could be argued that this statement would have sufficed had the state court never reached the federal claim," the fact that "the state court went on the reject the federal claim on the merits" makes it less clear that the state court actually relied on the procedural bar).  Accordingly, the State's argument that Petitioner has procedurally defaulted his claim regarding the trial court's failure to conduct a hearing is not well taken, and this Court should consider the merits of Petitioner's first ground for relief.[7]

## D.      Merits of Ground One

The AEDPA altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

---

[7] Additionally, given the complicated nature of the issue of procedural default in this case, this Court can decline to decide the issue of procedural default and dispose of Petitioner's first ground for relief on the merits. *Hudson*, 351 F.3d at 216 ("In this case, the question of procedural default presents a complicated question of Michigan law and is unnecessary to our disposition of the case.  We will therefore proceed directly to the merits of [the petitioner's] claim.").

19

State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey,* 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been

20

more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id*. at 520-21 (internal citations and quotation marks omitted). This Court applies this deferential standard of review to the state courts' rulings on Petitioner's remaining claim.

In his first ground for relief, Petitioner contends that the state trial court violated his Sixth and Fourteenth Amendment rights when it corrected his sentence without conducting a hearing at which he was present and represented by counsel.  In its December 2013 decision affirming the trial court's November 2011 decision, the state appellate court noted that, in *State v. Qualls*, 967 N.E.2d 718, 131 Ohio St.3d 499 (Ohio 2012), the Ohio Supreme Court had specifically approved the method – correcting the sentencing entry via *nunc pro tunc* order – used by the courts in this case.  *Falkenstein III*, 2013 WL 6408705 at * 2-3.

In *Qualls*, the defendant was notified at his sentencing hearing that his sentence included a term of post-release control.  The trial court's sentencing entry, however, omitted any language regarding the post-release control.  The defendant moved for a re-sentencing hearing on a different basis and the state trial court ascertained that the sentencing entry did not contain the required language regarding post-release control. The State requested that the trial court correct the entry via a *nunc pro tunc* entry.  The defendant argued that he was entitled to a *de novo* sentencing hearing.  The trial court rejected the defendant's arguments and issued a *nunc pro tunc* entry correcting its original sentencing entry in the case.  On appeal, the state appellate court affirmed the trial court's order.  The Ohio Supreme Court accepted jurisdiction to resolve a conflict

21

amongst Ohio appellate courts regarding whether a *nunc pro tunc* entry could be used to correct a sentencing entry in this context, or whether the defendant was entitled to a new sentencing hearing to correct the omission.

The Ohio Supreme Court determined that, because there was no dispute that the trial court had properly notified the defendant at his sentencing hearing that his sentence included post-release control, "the error in the sentencing entry was merely clerical in nature," and "the mistake was correctable" via *nunc pro tunc* order. 967 N.E.2d at 721-22, 31 Ohio St. 3d at 503. Further, "where notification was properly given at the sentencing hearing, there is no substantive prejudice to a defendant if a sentencing entry's failure to mention post-release control is remedied through a *nunc pro tunc* entry." 967 N.E.2d at 724, 31 Ohio St.3d at 505. This is because "when the notification of post-release control was properly given at the sentencing hearing, the essential purpose of notice has been fulfilled and there is no need for a new sentencing hearing to remedy the flaw." 967 N.E.2d at 724, 31 Ohio St.3d at 505.

Here, Petitioner argues that the trial court's failure to hold a hearing before correcting his sentence violated his constitutional rights, as set forth in *Kentucky v. Stincer*, 482 U.S. 730 (1987). In *Stincer*, the United States Supreme Court reiterated its holding that a defendant in a criminal case has "a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" 482 U.S. at 745 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1943)). The Court emphasized that the defendant's right to be present at a particular proceeding is governed by the extent to which his

22

presence at that proceeding contributes to the fairness of the proceeding:

> Although the Court has emphasized that this privilege of presence is not guaranteed "when presence would be useless, or the benefit but a shadow," [*Snyder*, 291 U.S. at 106–107], due process clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence," [*id.* at 108]. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

*Id*.

In *Stincer*, the defendant had been excluded from a pretrial hearing on the competency of two minor witnesses that the state intended to call against him at trial. The Court concluded that his absence from the hearing did not violate the defendant's constitutional rights because all of the questions at the hearing were directed at ascertaining the witnesses' ability to recollect and narrate facts, to distinguish between truth and falsehood, and to understand her moral duty to tell the truth.  *Id*. at 746. According to the Court, given the "particular nature of the competency hearing," defendant's presence at the hearing would not "have been useful in ensuring a more reliable determination at to whether the witnesses were competent to testify."  *Id*. at 746, 747.

Here, the state courts' conclusion that the trial court could correct Petitioner's sentencing entry without first conducting a hearing was neither contrary to, nor an unreasonable application of, *Stincer*.  The record reveals that the trial court notified Petitioner at his sentencing hearing that his sentence included a term of post-release control.  The effect of the *nunc pro tunc* entry was not to impose a new element of

23

Petitioner's sentence, but, rather, to modify the sentencing entry to reflect what had taken place at the sentencing hearing.  Petitioner offers no argument regarding how his presence at a hearing on the issue of his post-release control would "contribute to the fairness" of the proceedings, particularly given the ministerial nature of the *nunc pro tunc* entry.  Petitioner points to no other federal case law, and research reveals none, holding that, in these circumstances, the trial court's failure to conduct a hearing prior to correcting its judgment entry to correctly reflect what took place at sentencing violated Petitioner's constitutional rights.  Accordingly, Petitioner's first ground for relief should be dismissed.

### V.  Ground Two - Insufficient Evidence

In his second ground for relief, Petitioner contends that there was insufficient evidence to convict him of 41 counts of rape.  The State contends that the petition is not timely with respect to this ground for relief.  The State is correct.

As a preliminary matter, the fact that the trial court corrected Petitioner's sentence in December 2011 does not affect the calculation of the relevant one-year period of time with respect to Petitioner's second ground for relief.  In *Mackey v. Warden, Lebanon Corr. inst.*, 525 F. App'x. 357 (6th Cir. 2013), the petitioner was sentenced in 1998.  The petitioner's state court appeal was dismissed in 1999 for failure to prosecute.  In 2009, the petitioner filed a federal habeas petition.  In 2010, while the habeas petition was pending,  the petitioner filed a state court motion for re-sentencing under *Fischer*.  In February 2011, the state trial court re-sentenced petitioner.  Thereafter, in federal court, the State moved to dismiss his habeas petition as time barred.  The petitioner argued that

24

his statute of limitations began to run after he was re-sentenced in February 2011.  The

district court granted the motion to dismiss the petition.  On appeal, the Sixth Circuit

rejected Petitioner's argument:

> Here, Ohio law dictates that Mackey's federal habeas statute
> of limitations runs from his 1998 sentence. Under the [Ohio
> Supreme Court] precedent in *Fischer* and its progeny, the
> [common pleas court] was able to resentence Mackey only
> to impose post-release controls on February 4, 2011.
> *Fischer,* 128 Ohio St.3d at ¶ 29, 942 N.E.2d at ¶ 29; *State v.
> Carr,* No. 24438, 2012 WL 1484205, at *3 (Ohio Ct.App.
> April 27, 2012) (citing *Fischer* to state that the scope of a
> resentencing hearing to correct an original sentence that
> omitted post-release controls is limited to imposition of those
> post-release controls). For the purpose of determining the
> federal habeas statute of limitations under § 2244(d)(1)(A),
> the 2011 sentence was *de novo* only as to the imposition of
> post-release controls.  Therefore, the federal district court
> properly dismissed [the petitioner's] 2009 habeas petition
> because none of his fifteen grounds for relief claimed that
> the imposition of post-release controls in 2011 was contrary
> to federal law.

*Mackey,* 525 F. App'x at 362-63.  Here, Petitioner's second ground for relief does not

challenge the trial court's correction of its sentencing entry in December 2011.

Accordingly, under *Mackey*, the statute of limitations for Petitioner's second ground for

relief is calculated without regard to the fact that this correction occurred.

On June 1, 2004, the state appellate court entered its decision affirming

Petitioner's conviction.  (Doc. No. 7-1at Ex. 7.)  Rule 7.01(A)(1)(a) of the Rules of Practice

for the Supreme Court of Ohio required Petitioner to file a notice of appeal in the Ohio

Supreme Court within 45 days of that decision – by or on Friday, July 16, 2004.  Petitioner

did not file a timely notice of appeal in the Ohio Supreme Court.  Accordingly, his

conviction became final, for the purposes of the AEDPA statute of limitations, on July 16,

2004, and his one-year period of limitations began to run on the next day, July 17, 2004.

*See Gonzales v. Thaler*,         U.S.         , 132 S. Ct. 641, 653-54 (2012).  Thus, Petitioner's

one-year statute of limitations expired one year later on Saturday, Saturday, July 16,

2005.  *See* Fed. R. Civ. P. 6(a)(1)(A) ("[E]xclude the day of the act, event or default that

begins the period.").  Petitioner did not file his petition until July 23, 2014.  Thus, the

petition is time barred unless statutory tolling sufficiently extends the period of limitations

in this case.  Petitioner does not offer any argument regarding equitable tolling with

respect to his second ground for relief.  Accordingly, this ground for relief is untimely, and

the State's motion should be granted with respect to the second ground for relief.[8]

---

[8] There is an alternative basis for dismissing the second ground for relief.
Petitioner raised his sufficiency of the evidence argument in his direct appeal.  (Doc.
No. 7-1 at Ex. 5.)  He did not, however, file a timely notice of appeal to the Ohio
Supreme Court from the appellate court decision affirming his conviction.  When he
sought leave to file a delayed appeal, the Ohio Supreme Court denied the motion.
(Doc. No. 7-1 at Exs. 8, 35.)  Accordingly, Petitioner failed to properly exhaust this
ground for relief.  Further, there is no further mechanism by which Petitioner could raise
this issue in state court because, under Ohio law, *res judicata* now prohibits him from
raising the issue in any post-conviction proceeding.  *See State v. Cole*, 443 N.E.2d 169,
171, 2 Ohio St.3d 112, 113 (Ohio 1982); *State v. Perry*, 226 N.E.2d 104, 10 Ohio St.2d
175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in
post-conviction proceedings those claims that could have been raised on direct appeal).
The Sixth Circuit has determined that "the application of *res judicata* is an adequate and
independent state ground justifying foreclosure of constitutional claims in habeas."
*Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).  Because Petitioner can no longer
raise this claim in state court, it is procedurally defaulted.  Further, Petitioner offers no
argument regarding cause for, or prejudice resulting from, his procedural default of this
ground for relief, and, thus, it could also be dismissed on this basis.

26

## V.  Conclusion

For the reasons given above, (1) the State's motion should be DENIED; and

(2) Petitioner's § 2254 petition should be DISMISSED.


Date: May 4, 2015                         s/ *Nancy A. Vecchiarelli*
                                          NANCY A. VECCHIARELLI
                                          U.S. MAGISTRATE JUDGE

27